case number 192429 United States of America versus Gerri Avery are going on to exceed 15 minutes per side. Ms. Stout, you may proceed for the appellant. Good afternoon, Ms. Stout. I do want to advise you that Judge Batchelder is participating with the oral argument this afternoon, but she is doing it by audio only. But she is here, and I wanted to assure you that we are prepared for your case today that we have read your briefs. With that, you may begin. Thank you, Judge Griffin, and good afternoon, Judge Griffin, Judge Strange, and Judge Batchelder. I'm the attorney for the defendant appellate, Gerri Avery. It's often said, and I'm sure often thought, that an insufficiency of the evidence claim is simply a catch-all or a throwaway type argument. Our Supreme Court, however, in Jackson v. Virginia has encompassed the test when it made it clear that sometimes a properly instructed jury may convict when it can be said that no This sufficiency test and this argument must have tea. It must mean something in cases. It must give our judges the strength to be the gatekeepers they're required to be against wrongful convictions. And this court needs to remind lower courts that this is an it is the issue, insufficiency of the evidence. Here, the judge almost took the case away from the jury, but as unfortunately often the case, with all due respect to the district court who I admire, it backed off and left it to the jury. I was there when the jury gave its verdict. I was surprised, and I noticed the surprise on the judge's face as well. The jury got it wrong here, and the lower court should have granted my motion for new trial. The defendant here, the appellant, Geri Avery, was simply a secretary for integrated health care management. She did not corruptly impede or endeavor to impede the administration of the IRS, which she was charged with. Rather, she was a check signer at the company. Why was she a check signer? Because her main boss, although she had many which came out in trial, her main boss DeSantos, who ultimately pled guilty, her main boss lived in Florida. She lived in Michigan where the company was. Checks needed to be signed when she was directed to have them processed and get them signed. Eventually, the company did not do well, and a few quarters of payroll tax was not paid. The company ultimately went bankrupt. The IRS agent, Ms. Allen, did one thing, called the check signer. Not all the corporate principals called the check signer. My client returned the call, Ms. Avery, and left a message. The entirety of the government's theory rested upon Ms. Avery's inquiry as well as another inquiry. The voicemail indicated that her bosses were responsible. Her interpretation was they were looking for who was responsible for the payroll taxes. Her bosses, her many bosses, she gave them many names, but she did not give them DeSantos' name, why he lived in Florida. She explained that through her letter from a lawyer eventually. Furthermore, she had told the IRS when they had later asked for some documents that she didn't know how to obtain those documents. Simple as that. At the time they made the assessment of over $200,000 of the secretary, she was working at a fitness center on an hourly basis. Let me ask you, counselor. Sure. I agree. This is a concerning case, but why aren't we in the situation that the government says the voicemail is misleading, intentionally so, you say it's unclear. Why aren't we just in a situation where the jury took it up and resolved it? And that's Avery's role to do. Forgive me. Go ahead. I'm struggling with where we are here in the case. Judge Strange, I appreciate it. But what my argument is, is that you have multiple or two interpretations of the information that my client provided. And let's go back to the gatekeeper approach. We are in a criminal setting where cases have to be proved beyond a reasonable doubt. This isn't a preponderance standard. So if you have two interpretations, and the judge even said that in her answer or in her argument and opinion about the evidence. She said, and I quote, the court appreciates that Avery and the IRS may have conflicting interpretations of Avery's voicemail messages and the letter sent. She's recognizing there's different interpretations. That's when a gatekeeper has to step in. If the government can't marry their evidence to their conclusion, that's insufficient, period. That's not beyond a reasonable doubt. That's why, Your Honor. And I thank you for that question. So anyways, back to my argument, these statements that she made led to an indictment, an indictment of a secretary. The government seized upon Ms. Avery's words, in particular, that she did not know how to obtain certain records. Mind you, this is based on voicemail and a letter from an attorney, not an interview with Ms. Avery. In the directed verdict, when pondering what Ms. Avery meant, or what it could be, about her lack of understanding of obtaining bank records, checks, signature cards, corporate documents, corporate minutes, the judge even said, and I quote, what does that mean? Not sure how to get it? Who do I call? Could it be mailed? Do I have to get them in person? What does it mean? I'm not sure how to get all these other things. So even the judge was telling the government, in my argument, that it's not clear. She further said another plausible interpretation of her direction to investigate other officers besides DeSantos is she fully expected the officer, IRS officer Allen, to get to DeSantos. Mr. Sigler himself told them to look at Mr. DeSantos. She wasn't trying to hide who he was. He was an owner. The government argued in response to all that, well, she had access to online banking. This is a felony, a charge requiring guilt beyond a reasonable doubt. So having access to online banking is not an answer to what the IRS meant by their questions and what she meant by her answer. Quite frankly, this opens the door to charging any person who works with a corporation in response to the IRS about the most basic of information or makes simple inquiries, makes them subject to an indictment based on statements that are subject to more than one interpretation, statements that are never vetted, statements that are never vetted by the IRS with other people in the corporation. It becomes open season on bookkeepers and secretaries. It was shown at trial that Ms. Avery is simply a salaried employee. She was simply a secretary. It was proven she had no ownership interest integrated. She had no bonus structure, just a salary. And following my Rule 29 at the close of the government's proofs, it's interesting that the government then realized the weakness of its case because it started arguing about emails. It backed away from the statements alone of Ms. Avery and started emphasizing that the emails somehow proved, because she was a recipient of emails, that she was somehow involved with the finances. This too is insufficient. First, my other argument or my co-argument in this brief is that a lot of the emails were from a company involving a company Prospectus, which Prospective, which is a software company that was opened after the bankruptcy of integrity, where DeSantos continued working and she continued working on an hourly basis for him and had nothing to do with integrated. Just because she was assisting in that bookkeeping and was given knowledge of some financial information by virtue of being seceded and emails and told to write out or sign certain checks and give them to certain people, does not give her knowledge of why payroll taxes are paid or not paid and making the decision of paying those taxes or not and deciding to protect anybody or herself because she never felt responsible. Thank you. I'm going to reserve the rest for my rebuttal. All right, you'll have your five minutes rebuttal. Any further questions at this time, Judge Batchelder? No. Judge Scranton? Okay, all right. Let's hear from the United States then. Good afternoon, your honors. Douglas Rennie for the United States. Your honors, this case is about the defendant lying to the IRS to protect her friend and benefactor. Among the corrupt acts charged was defendants falsely telling the IRS in a letter that Joseph DeSanto was not involved in the day-to-day affairs of and all she knew is that something... Counselor, how did her counsel explain that in testimony? How did he explain the... Yes, how did he explain that statement in the letter in testimony? He said that he did base that statement on her telling him that Avery, excuse me, that DeSanto was in Florida. However, he also said that all the information in the letter was based on information that he got from Avery, that she reviewed a draft of the affidavit, corrected a spelling error, signed it So, as the district court explained, there was no evidence that he interpreted her statements differently than what she conveyed to him. And it's also notable that she lied to her own attorney about DeSanto's role and about who directed what bills should be paid here. And that's the second statement that I was referring to that she said to the IRS, which is all she knew is that someone in The evidence, including the testimony of her co-workers and her own emails, proved that those statements were false and that the defendant made those false statements with a corrupt intent. Mr. DeSanto was deeply involved in the day-to-day affairs and made the key decisions about paying bills. And she well knew this because she worked by his side running the company. She knowingly lied about his role because she was close friends with him and didn't want him to be liable for the unpaid taxes. You know, I think I understand the importance of collecting these payments. They're payments made by employees withheld and they need to go to credit those employees. That's an important job you have. I'm just, I find the overarching way this was run very concerning. In this, you know, I was looking back again through your briefs about DeSanto's and your argument here accurately reflects what you made there was that she was protecting DeSanto's and that DeSanto's was fully in. And, you know, if that's the case, I'm struggling with the fact that Officer Allen never even interviewed DeSanto's and instead turned to his secretary and said, this is the man you're protecting. And yet in the course of this investigation, he's ignored. And your brief even says that Allen could reasonably conclude that DeSanto's was not responsible for the payroll taxes. And so he's not responsible. You're investigating her because she's his secretary. And yet she is now responsible for those items that your own brief says he wasn't responsible for. I'm just the, I don't even think she was low hanging fruit. I think she was just somebody at kind of the bottom of the corporate chain, not an owner, not a decision maker. And she's the one that's charged. Can you help me understand this? Your Honor, this criminal case is about her lying to the IRS. So the question of who is responsible for the payroll taxes, that's something different. That would be a... Well, no, it left her responsible. It left, you're charging her, left her responsible for that money. As a matter of restitution? Yes. But again, this is because she was, she lied to the IRS repeatedly. We can go... Let me make sure I've got it straight. One voicemail and one letter from her counsel or two letters from her counsel? Two letters from her counsel. The second one was a slightly different version of the first one, but it also included an affidavit from Mr. DeSanto. And so that's the core... Let me look at the... I looked over, we don't even have the voicemail, but we have Alan's notes. She knows I had been working with the president and I should also be looking at Hussein, Harabi, and Ziegler before looking at employees. She left a message that they never received any canceled checks, not sure how to get all of the other things requested in the July letter. That and then two letters from her counsel. I'm kind of struggling. I'm kind of struggling with this counsel. That just... The statements she's making... Sorry, Your Honor. No, go ahead. She had made several statements in these letters and in the voicemail that are demonstrably false. Statements like, all she knows is that someone hands her checks. She well knew that DeSanto was running this company. DeSanto was calling the shots here. She knew who it was, but she not only lied to the IRS about it, she lied to her own attorney who said that's what he was doing. He was putting these letters together so he could tell the IRS this is the person that you should be going after, but he was never able to figure it out because she refused to tell him. But DeSantos and Celentano, the biggest players, were never even interviewed? That's a correct statement of the record, isn't it? Uh, I believe that's correct, Your Honor. During the IRS civil investigation, yes. Okay. But again, there are numerous statements in... It's not just the voicemail. Even if you decided, well, we're not sure about this voicemail, there are numerous statements in the letter that are demonstrably false, like she did not participate in discussions over which bills would be paid. And it's not a matter of her just being copied on emails. She's sending emails to the director of finance saying, for example, in the appendix, page 157, I need to get payment out for this ASAP for an Amex bill. And does that say that she chose to do the payment or does that say she was instructed to get the payment out? It doesn't matter because it's false. She's saying she didn't participate in discussions over which bills were paid and similar statements when she clearly did. No, who is to question which bill to pay or how to pay them once she's been instructed to do it? She's just telling them to pay the bill. And didn't the other people who worked in Integrated testify that the bosses, the owners, she would not have paid anything unless she was told to by the bosses or the owners? There was some testimony to that effect. But the question here is whether she's lying to the IRS about what she knows. And she clearly is. She's claiming she didn't participate in any of these discussions. She didn't know anything about the finances when we've got this big record of all these emails where she was in the middle of all these conversations. She was leading discussions about what bills should be paid. She was accessing things like... Can you give me a citation to a record of evidence that showed she was leading a conversation to decide whether or not to pay? Sure. She's telling the director of finance on, for example, page 157 of the appendix, we need to pay Amex, ASAP, page 179. Does it show that she made the decision to pay them rather than implemented the decision of somebody else to pay them? It doesn't, but that isn't relevant to whether she's telling the truth to the IRS or not. The question here is whether she is obstructing the IRS's attempt to collect these unpaid payroll taxes. And by telling them that she didn't participate in these discussions, she's lying because she did. She was in the middle of all these discussions. She knew how to get things like bank statements. She had access to a Dropbox folder called bank statements. She was preparing detailed income statements according to her own emails. She was putting together balance sheets. She was in the middle of conversations about the employees' W-2 forms and their withholding taxes. She knew she had access to all of this information and was telling the IRS, I don't know anything about the overall finances of the company. At the same time she was doing this, she was emailing people like Cespedes and DeSanto and preparing detailed income statements. The problem here is that she is actively lying to the IRS when they're trying to figure out who's responsible for these taxes. So to the extent that she was assessed and should not have been, this is partially her fault because she's lying to the IRS. If she just said, the person who is responsible, the person pulling all the strings here is my boss, the guy I work for every day. That's who you should be talking to. And did she send an affidavit where Santos said in the affidavit that he was a decision maker on these issues? Did she not forward that to you all? She did, but it didn't say that. It said that Mr. DeSanto was one of seven people who from time to what he was trying to figure out, which was who was making the decisions. It said generically, there were people who made decisions, including DeSanto and seven other people. But we know from the testimony at trial, the people who generally made the decisions about paying bills was number one DeSanto and the decision not to pay the unpaid payroll taxes was Mr. DeSanto and Mr. Cespedes. So again, this is actively misleading, if not outright false. Thank you. Now, counsel mentioned her argument that if there are two interpretations of the evidence that this should be a basis for granting a rule 29 motion. But as we pointed out in our brief, an alternate explanation for evidence is not a basis for reversal. The evidence need not remove every reasonable hypothesis of innocence, as this court stated in the Seton case and the Stone case. It isn't the mere fact that the district court might have been struggling to understand the theory or understand the evidence or even misapplying the relevant standard during the trial doesn't change what the standard is here, which is the Jackson versus Virginia standard, which we defer to the jury's verdict. And I would point out that the district court did ultimately apply the correct standard in its order after the trial. Your Honor, just to point out a few more examples of statements that she made to the IRS in her communications, she said things like she didn't work in the accounting department when Ron Waltz, the director of finance, testified at trial that she did. She said that she was not involved in the hiring of a new accountant.  of employees. But there's an email in the record at page 192 of the appendix where she talks about interviewing a job candidate and taking notes on that person's resume. In addition to the some of the statements I mentioned earlier, she said that she said that paying creditors was not part of her job. Again, all those emails going back to that demonstrates that it was. Your Honor, I see my time is running out. I would just point out again that this case is about the defendant lying to the IRS to protect her friend. That's why she was charged and convicted here. The jury heard all these arguments that counsel is making here and it decided to reject them. It found that the evidence established that she was guilty and under the Jackson versus Virginia standard, we should not be second guessing the jury's decision here. Thank you. All right. Thank you, Mr. Rennie. Any further questions, Judge Batchelder, Judge Grange? No, thank you. Okay. Ms. Stout, you have five minutes of rebuttal. Good. I certainly hope I can get it all in. The fact that a secretary interviews somebody, it does not give her hiring and firing power. Is she really a secretary? I mean, she's got all these different titles that people have referred to her as an assistant or as a whatever. She's got a lot. I mean, does she have a title as a secretary or is it kind of ambiguous what her title is? It's kind of ambiguous, Judge, and I don't think that anybody really knew other than she was there at a desk and Mr. DeSantos called her. One of many bosses, the two that pled guilty, among others, was DeSantos and Sepedis, which proves that those are people with the responsibility. Being told to pay a bill. God rest his soul, my husband Neil Fink used to tell me to pay bills and I used to say, but how? There's no money. I don't see how that gives you responsibility or you ask something to be paid. Further, it was shown that the accounting company was the one that wrote out the checks, not her. The accounting division. So if she was an accountant, she wasn't even in that division and they testified. Let's figure out why Ms. Avery was indicted here. I'll tell you why. Because her cooperation was wanted. That's why. Ms. Avery was offered a misdemeanor in this case. You're never offered misdemeanors in the Eastern District Court for the Eastern District of Michigan, only when they desperately want someone to cooperate. But you can't cooperate if you don't have any information and you can't cooperate when you're innocent. So it was a problem. And when we went to trial, the government had to change their theories and their argument because they really didn't know what they really had on her. This isn't a civil case where there can be a couple of theories and you have to find which one is perhaps more believable. This is beyond a reasonable doubt. Your theory has to be beyond reasonable doubt. Prosecutor wanted her cooperation because this is part of a much larger case where there's some lawyers and some doctors that are soliciting cases for themselves by buying police reports, accident reports before they're available. It's big. My client was completely tangential to all this, got wrapped up because this integrator got charged and they thought she had information. It went on and on and on. And I was the trial lawyer. I'm asking this court to speak out and provide boundaries to set a bar for cases that have a minimal or questionable evidence or two theories. When you need to marry yourself to one theory of what you can prove, and that's what the jury needs to find. I think the jury was very confused here, since it was given emails from different companies that had nothing to do with integrated and nothing to do with the differentiating roles, whatever they may be. And to suggest that because she had access to bank statements means that she knew that that's what they wanted her to do, to email them or mail them or see them. You would think there would have been ongoing conversations. My real surprise is trial because I almost feared Ms. Allen taking this IRS agent that we think is awesome with powers and how little she did and how little knowledge, how her own superior, which came out as evidence, questioned her investigation and why she was going forward. And ultimately, the next thing we know, my client's liable for over $200,000, which has wrecked her life and her ability to get financing and other things in life as a person who had no interest in a company. So to do such a minimal investigation, take a couple words that are said and try to interpret them, and then bring it to trial and throw in a bunch of emails and a bunch of other companies and make it look like a big conspiracy is going on with this woman who sits at a desk and takes calls for Mr. DeSantos is shameful. And it's a case where a district court needs boundaries and needs to have the strength to say, no, this isn't going to the jury, or I'm going to reverse this because there's just not enough on one theory to find this person guilty beyond a reasonable doubt. Thank you all. I appreciate it. Any further questions, Judge Batchelder, Judge Scratch? No. All right. Thank you for your arguments. We'll carefully consider the case. The case will be a call the next case. Thank you.